**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

RITCHIE CAPITAL MANAGEMENT, L.L.C.,
RITCHIE CAPITAL MANAGEMENT, LTD.,
RITCHIE SPECIAL CREDIT INVESTMENTS,
LTD., RHONE HOLDINGS II, LTD., YORKVILLE
INVESTMENT I, L.L.C., and RITCHIE CAPITAL
STRUCTURE ARBITRAGE TRADING, LTD.,

        Plaintiffs,

        v.

GENERAL ELECTRIC CAPITAL
CORPORATION,

        Defendant.

14 Civ. 08623 (PAE) (AJP)

## DECLARATION OF ROBERT J. MALIONEK

        I, Robert J. Malionek, am an attorney at Latham & Watkins LLP, attorneys for

Defendant General Electric Capital Corporation in the above-captioned matter.  I am admitted to

the Bar in the State of New York and of this Court.  I am submitting this declaration in support

of Defendant's Motion to Stay.

        1.        Attached as Exhibit A is a true and correct copy of Defendant General

Electric Capital Corporation's Motion for Transfer and Consolidation of Actions Pursuant to 28

U.S.C. § 1407, *In re General Electric Capital Corporation Thomas Petters Investment*

*Litigation*, MDL No. 2603 (J.P.M.L. Nov. 14, 2014), ECF No. 1.

2.      Attached as Exhibit B is a true and correct copy of the Brief in Support of

Defendant General Electric Capital Corporation's Motion for Transfer and Consolidation of

Action Pursuant to 28 U.S.C. § 1407, *In re General Electric Capital Corporation Thomas*

*Petters Investment Litigation*, MDL No. 2603 (J.P.M.L. Nov. 14, 2014), ECF No. 1-1.

I declare under penalty of perjury that the foregoing is true and correct, pursuant

to 28 U.S.C. § 1746.

Dated: November 24, 2014
New York, New York

/s/ Robert J. Malionek
Robert J. Malionek

# Exhibit A

**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

In re: Petters-Related Litigation                                    MDL No. _____


**DEFENDANT GENERAL ELECTRIC CAPITAL CORPORATION'S
MOTION FOR TRANSFER AND CONSOLIDATION OF ACTIONS
PURSUANT TO 28 U.S.C. § 1407**

Pursuant to 28 U.S.C. § 1407, Defendant General Electric Capital Corporation ("GECC")

respectfully moves this Panel for an order transferring and consolidating the actions identified

herein and in the Schedule of Actions.  GECC respectfully suggests that the actions be

transferred to and consolidated before Judge Susan Richard Nelson of the United States District

Court for the District of Minnesota.  In support of this motion, GECC states as follows:

1.       GECC currently is being sued in four actions that are pending before four federal

judges in four different federal districts, all relating to GECC's brief lending relationship with

two entities affiliated with Thomas Petters ("Petters") approximately fifteen years ago.  *See*

Schedule of Actions.  Petters and his associates operated the third largest Ponzi scheme in U.S.

history at $3.65 billion, promising investors that proceeds from notes would be used to finance

consumer electronics purchases that would then be re-sold to retailers, when in fact Petters either

pocketed the proceeds or used them to pay previous investors.  Petters' headquarters were

located in Minnesota, Petters lived in Minnesota, and many of the transactions underlying his

scheme occurred in Minnesota.  Criminal and civil cases brought against Petters and many of his

associates were brought in the District of Minnesota, and consolidated bankruptcy proceedings

for numerous Petters entities are pending in the Bankruptcy Court for the District of Minnesota.

2.       The four actions brought against GECC were brought by investors in the

fraudulent enterprise operated by Petters and his associates, and they assert virtually identical

causes of action, concern identical core facts, documents, and witnesses, raise identical legal

issues, and name GECC as the sole defendant.  Collectively, the plaintiffs in the four actions

seek over $1.4 billion in compensatory damages from GECC, and seek punitive and/or treble

damages.

       3.       Specifically, and as detailed in the Schedule of Actions, the pending cases are as

follows:

          a.      *Mukamal v. General Electric Capital Corporation (In re Palm*

*Beach Finance Partners, L.P.)*, No. 9:12-ap-01979 (Bankr. S.D. Florida);

          b.      *Gecker v. General Electric Capital Corporation*, No. 1:14-cv-

08447 (N.D. Illinois);

          c.      *Greenpond South, LLC v. General Electric Capital Corporation*,

No. 0:14-cv-01214 (D. Minnesota); and

          d.      *Ritchie Capital Management, L.L.C. et al. v. General Electric*

*Capital Corporation*, No. 1:14-cv-08623 (S.D. New York).

       4.       All four actions are based upon the same allegations—namely, that GECC

allegedly discovered Petters' Ponzi scheme but agreed to stay silent in exchange for repayment

on GECC's existing loans to Petters.  *See* Palm Beach Am. Compl. ¶¶ 7-8, 77; Greenpond

Compl. ¶¶ 4, 37; Ark Compl. ¶¶ 4, 45; Ritchie Summons with Notice at 2.  Although none of the

Plaintiffs had any discussions or interactions with GECC regarding Petters, and all of the

Plaintiffs invested in Petters *after* the GECC-Petters lending relationship had terminated, the

Plaintiffs assert two causes of action against GECC:  civil conspiracy to defraud and aiding and

abetting fraud.  *See* Palm Beach Am. Compl. ¶¶ 166-184; Greenpond Compl. ¶¶ 89-94; Ark

Compl. ¶¶ 132-147; Ritchie Summons with Notice at 2.

5.     Each of the actions against GECC involves nearly identical claims and allegations and, as such, consolidated pretrial proceedings would greatly promote the just and efficient conduct of these actions.  Absent transfer and consolidation, there will be enormous duplication of discovery and judicial resources, essential witnesses would face significant inconvenience, and there would be a serious risk of inconsistent and conflicting rulings on critical issues.  *See* 28 U.S.C. § 1407; Def.'s Brief in Supp. at 15-17.

6.     GECC respectfully proposes that the actions be transferred to the United States District Court for the District of Minnesota for consolidation before Judge Susan Richard Nelson.  The Greenpond Litigation currently is pending before Judge Nelson.  *See* Schedule of Actions.  Further weighing in favor of consolidation before Judge Nelson is the fact that the District of Minnesota, including Judge Nelson herself, has extensive prior experience with Petters-related litigation, including criminal and civil cases brought against Petters and his affiliates, as well as related bankruptcy matters.  *See* Def.'s Brief in Supp. at 17-20.  Other Petters-related litigation has been transferred to the District of Minnesota already and, as described above, that is the District in which most Petters-related proceedings have been and continue to be conducted.

WHEREFORE, for the reasons more fully set forth in the accompanying brief and exhibits thereto, GECC respectfully requests that the actions listed on the Schedule of Actions, and any actions yet to be filed or other potential tag-along actions, be transferred for consolidated proceedings before Judge Nelson in the United States District Court for the District of Minnesota.

Dated:  November 14, 2014

Respectfully submitted,

/s/ Robert J. Malionek
Robert J. Malionek
Roger G. Schwartz
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY  10022
Telephone:  (212) 906-1200
Facsimile:  (212) 751-4864
Email:  robert.malionek@lw.com
        roger.schwartz@lw.com

Sean M. Berkowitz
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois  60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767
Email:  sean.berkowitz@lw.com

*Counsel for Defendant*
*General Electric Capital Corporation*

**Exhibit B**

**BEFORE THE UNITED STATES**
**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

In re: Petters-Related Litigation                                          MDL No. _____

**BRIEF IN SUPPORT OF DEFENDANT GENERAL ELECTRIC CAPITAL**
**CORPORATION'S MOTION FOR TRANSFER AND**
**CONSOLIDATION OF ACTIONS PURSUANT TO 28 U.S.C. § 1407**

Defendant General Electric Capital Corporation ("GECC") submits the following brief in

support of its motion for transfer and consolidation pursuant to 28 U.S.C. § 1407:

## I.   INTRODUCTION

As of the date of this filing, four federal judges are presiding over cases (collectively, the

"Petters-Related Cases") concerning identical core facts, documents and witnesses, asserting

virtually identical causes of action, raising identical legal issues, and naming the same sole

defendant (GECC).  The plaintiffs in all of these Petters-Related Cases (the "Plaintiffs")[1] were

investors in the enterprise run by Thomas Petters ("Petters"), which ultimately was discovered to

be the third largest financial fraud in U.S. history.  The Plaintiffs in each case have asserted two

causes of action against GECC—civil conspiracy to defraud and aiding and abetting fraud[2]—

alleged to arise out of GECC's brief lending relationship with Petters approximately fifteen years

ago.  All of the Plaintiffs allege the exact same facts, which are disputed by GECC: that GECC

purportedly discovered Petters was engaged in a fraudulent scheme but agreed to keep quiet in

exchange for being repaid on its existing loans to two entities affiliated with Petters.  All of the

Plaintiffs invested in Petters *after*—as much as seven years after—GECC's lending relationship

with Petters had concluded.  Further, none of the Plaintiffs alleges that it ever had any

---

[1]     The term "Plaintiffs" as used in this brief shall include their predecessors in interest,
where applicable.

[2]     The aiding and abetting claim asserted in the Palm Beach Litigation (as defined below)
has been dismissed.

discussions or other interaction with GECC regarding Petters (or anything else).  Rather, the

Plaintiffs' theory is that, had GECC blown the whistle on Petters, they never would have

invested in or been harmed by Petters.  As a result, all of the Plaintiffs' affirmative claims center

exclusively on GECC's relationship with Petters and GECC's actions during a brief period

fifteen years ago.  Thus, in each case the relevant documents, depositions and third party

discovery related to the third largest Ponzi scheme in U.S. history and the Plaintiffs' allegations

regarding GECC will substantially overlap.

        This is exactly the situation for which pretrial consolidation under 28 U.S.C. § 1407 was

designed.  Absent transfer and consolidation, there will be enormous duplication of discovery

and judicial resources.  Essential witnesses (including Petters and his actual co-conspirators in

prisons around the country, a large number of former employees, and others affiliated with

Petters' enterprise, and GECC employees or—given the passage of time—former employees)

would face significant inconvenience.  Moreover, substantial unnecessary cost and burden would

result, there would be a serious risk of inconsistent and conflicting rulings on critical issues, and

any global settlement discussions would be impossible.  As a result, GECC seeks consolidation

of the Petters-Related Cases within a single district for pretrial purposes.

## II.    FACTUAL BACKGROUND

        The Plaintiffs' affirmative claims all are directed at the same set of alleged core facts,

summarized here.  In 1998 and 1999, respectively, GECC extended revolving credit lines to two

entities controlled by Petters: Petters Capital, Inc. ("Petters Capital") and redtagoutlet.com, inc.

("Redtag"), each based in Minnesota.  Thereafter, Petters Capital and Redtag made a series of

financing requests to GECC under the two revolvers for the purported purpose of purchasing

inventory from third parties to sell it to other third party retailers.  In late 2000, the Petters Capital

line was closed, and by early 2001, the Redtag line was closed.  Approximately eight years after

the GECC-Petters lines were closed, Petters' endeavors were revealed to be an extensive fraud.  In 2008, Petters' offices in Minnesota were raided by the FBI, and in 2009, Petters was tried and convicted by a federal jury in Minnesota on twenty criminal charges.[3]  Petters currently is serving a fifty-year prison term at USP Leavenworth in Kansas.

The Plaintiffs all allege that they invested with Petters at some point after the Petters-GECC credit lines were terminated and suffered damages when their investments had not been repaid at the time Petters' fraud was uncovered.  None of the Plaintiffs' pending claims is based upon a theory of reliance on GECC or on any duty owed by GECC to the Plaintiffs.  Rather, the Plaintiffs allege that GECC learned of Petters' fraudulent scheme and agreed with Petters that GECC would not disclose the scheme to third parties in return for Petters paying off GECC under the credit lines.  Had GECC not assisted or conspired with Petters by this alleged agreement to remain silent, the Plaintiffs assert, the Plaintiffs would not have invested in Petters nor ultimately would he have caused them any harm.  Collectively, the Plaintiffs seek damages in excess of $1.4 billion from GECC, not including alleged punitive or treble damages.[4]

## III.   SUMMARY OF PENDING ACTIONS AGAINST GECC[5]

On September 29, 2012, the first of the Petters-Related Cases was filed against GECC. During 2014 (most recently, on October 27, 2014), three additional lawsuits were filed against

---

[3]      GECC provided documents to the government in connection with Petters' criminal trial, and GECC witnesses testified against Petters during his trial.

[4]      GECC expressly denies the Plaintiffs' allegations regarding a purported conspiracy with Petters or that GECC in any way aided or abetted Petters' fraud.

[5]      Nothing herein shall be construed as an admission that the Plaintiffs have standing to assert the claims they have brought against GECC.  Indeed, currently the Bankruptcy Court for the District of Minnesota is considering whether tort claims by former Petters investors against third parties should be enjoined because the Petters bankruptcy trustee has exclusive standing to bring such claims.  A ruling by the Minnesota bankruptcy court on this issue may have a significant impact on each of the Petters-Related Cases.

GECC.  *See* Schedule of Actions.  All of the Petters-Related Cases are in the beginning stages of litigation.  Indeed, in three of the four cases, GECC has not yet filed an answer or otherwise responded to the complaints, and discovery has not begun.  Even in the earliest case filed, the parties still are engaged in written discovery and are in the midst of reviewing documents, but depositions have not begun and a pretrial conference is not scheduled until April 2016.  In each of the cases, GECC is seeking a stay of proceedings pending a ruling on this Motion.

### A.      The Palm Beach Litigation

The first lawsuit (the "Palm Beach Litigation")[6] was initiated in September 2012 by Barry Mukamal (the "Palm Beach Trustee"), in his capacity as liquidating trustee of the liquidating trusts for Palm Beach Finance, L.P. and Palm Beach Finance II, L.P. (together, the "Palm Beach Funds")  in the United States Bankruptcy Court for the Southern District of Florida. *See* Palm Beach Docket.  The Palm Beach Funds were created in 2002 and 2004, respectively, for the sole purpose of investing with Petters, and they filed petitions for bankruptcy protection in November 2009.  *See* Palm Beach Am. Compl., ¶¶ 15-16.

The Palm Beach Trustee filed an amended complaint on December 21, 2012, alleging nine causes of action against GECC, including aiding and abetting fraud, conspiracy to commit fraud, negligent misrepresentation, and fraud.  *See id.*  GECC moved to dismiss the Palm Beach Trustee's claims on January 25, 2013, and on August 23, 2013, the court granted GECC's motion as to all counts except for the Palm Beach Trustee's conspiracy claim.  *See* Order Granting in Part and Denying in Part GECC's Motion to Dismiss, Ex. A.  In December 2013, GECC filed its answer to the amended complaint and, in January 2014, GECC filed an amended answer.  *See* Palm Beach Docket.

---

[6]      *Mukamal v. General Electric Capital Corp. (In Re Palm Beach Finance Partners, L.P.)*, Adversary Case No. 12-01979-PGH (Bankr. S.D. Fla.).

The Palm Beach Trustee does not allege that GECC had any direct contact with the Palm Beach Funds at any time.  Rather, the Palm Beach Trustee's conspiracy claim against GECC is based upon the following allegations[7]:

- GECC was a lender to Petters Capital and Redtag.  The credit agreements provided for success fees to be paid to GECC.  *See* Palm Beach Am. Compl., ¶¶ 5, 37, 42, 46.

- GECC failed to enforce material provisions of the credit agreement with Petters Capital, including certain cash controls.  *See id.*, ¶¶ 52-54.

- GECC employee Richard Menczynski had an "unusual and close" relationship with Petters.  *See id.*, ¶¶ 55-56.

- On May 3, 2000, GECC sent a purchase order verification form to Petters Capital requesting that it be sent to Costco to complete and return.  Petters caused Costco's signature to be forged and returned the form to GECC.  *See id.*, ¶¶ 61-64.

- GECC grew suspicious of Petters.  As a result, on October 9, 2000, GECC and Petters Capital signed an agreement that provided for the payoff and termination of the Petters Capital credit facility by October 27, 2000.  *See id.*, ¶¶ 68-70.

- In late October 2000, GECC (which had not yet been paid off) again sought verification of Costco purchase orders.  This time GECC contacted Costco directly and was told that the purchase orders were not Costco's.  Immediately thereafter, Petters called GECC and threatened it, saying GECC should leave Petters' customers alone.  As a result, GECC understood that Petters was operating a fraudulent enterprise and had knowledge of a conspiracy to defraud investors.  *See id.*, ¶¶ 71-77, 91-92.

- Petters Capital paid off GECC in an "atypical and improper manner."  *See id.*, ¶¶ 93-102.

- In connection with a Redtag financing request in December 2000, Petters sent GECC copies of Costco checks to prove that Costco had paid on the earlier purchase orders.  GECC called the bank to confirm the checks, and the bank told GECC that the checks had cleared but for different amounts.  *See id.*, ¶¶ 105-109.

- GECC violated applicable banking regulations and internal policies.  *See id.*, ¶¶ 80-84, 101, 113, 164-165.

---

[7]     The following summary of the Palm Beach amended complaint is included only for purposes of showing common questions of fact among the Petters-Related Cases.  In all the cases GECC expressly denies the Plaintiffs' allegations regarding a purported conspiracy with Petters or that GECC in any way aided or abetted Petters' fraud.

- In order to get repaid on its loans to Petters, GECC joined a conspiracy with Petters and committed the following overt acts and omissions, among others, in furtherance of the conspiracy:

    o On January 30, 2001, GECC responded to Redtag auditor Ernst & Young's request for information regarding any Redtag defaults under the GECC-Redtag credit facility, but failed to describe the Costco checks sent by Petters in December 2000. *See id.*, ¶¶ 114-116.

    o GECC failed to correct a recommendation letter that Mr. Menczynski had issued to Petters on January 4, 2000, despite knowing it would be distributed to third parties. *See id.*, ¶¶ 47-51, 123, 149-150.

    o On March 3, 2003, GECC consented to the termination of financing statements it had filed in connection with the GECC-Petters Capital credit facility. *See id*., ¶¶ 130-144.

- Petters and his associates used Petters' former relationship with GECC to induce others to lend to Petters. *See id*., ¶¶ 126-127.

The Palm Beach Trustee is seeking damages of over $1 billion and asserts that treble damages are warranted.

The parties have exchanged well over 1 million documents, are still collecting and producing additional documents, have served and filed initial responses to written discovery requests, and currently are litigating motions to compel with respect to various discovery issues. No depositions have been taken in the case. The Palm Beach Trustee filed Initial Disclosures identifying over 115 witnesses with knowledge related to the action, including:

- Petters and several of his affiliates and co-conspirators, including Deanna Coleman, Bob White, Larry Reynolds, Michael Catain and Frank Vennes, many of whom are in federal prisons around the country;

- 25 other witnesses purportedly with "knowledge of Petters' fraud" or "knowledge of Petters' business";

- Over a dozen current GECC employees; and

- Over 20 former GECC employees now located around the country and internationally.

The Palm Beach Trustee has proposed deposing many of these witnesses during 2015.

The Palm Beach Trustee and GECC also recently submitted an agreed motion to continue the pretrial conference and extend discovery deadlines, which was granted by the Court on October 27, 2014.  *See* Ex. B.  The scheduling order sets a pretrial conference in April 2016, with trial not scheduled to begin until mid-2016 at the earliest.  *See id.*

B.    **The Greenpond Litigation**

The second lawsuit (the "Greenpond Litigation")[8] was initiated on April 14, 2014, by Greenpond South, LLC ("Greenpond") in Minnesota state court.  *See* Greenpond Compl.  On April 21, 2014, GECC removed the action to the United States District Court for the District of Minnesota.  *See* Greenpond Docket.

Greenpond had no relationship with Petters; rather, Greenpond acquired the rights and claims of Acorn Capital Group, LLC ("Acorn").  *See* Greenpond Compl., ¶¶ 2, 11.  Greenpond alleges that Acorn invested with Petters after the GECC-Petters lending relationship ended. Greenpond does not allege that Acorn (or Greenpond) had any contact with GECC. Greenpond's claims against GECC for conspiracy to commit fraud and aiding and abetting fraud are based upon the same allegations as those made by the Palm Beach Trustee:

- GECC was a lender to Petters Capital and Redtag.  *See id.*, ¶¶ 3, 20.  The credit agreements provided for success fees to be paid to GECC.  *See id.*, ¶¶ 3, 21.

- GECC failed to enforce material provisions of the credit agreement with Petters Capital, including certain cash controls.  *See id.*, ¶ 32.

- GECC employee Richard Menczynski had an improper relationship with Petters.  *See id.*, ¶¶ 24, 27-28, 33.

- On May 3, 2000, GECC sent a purchase order verification form to Petters Capital requesting that it be sent to Costco to complete and return.  Petters caused Costco's signature to be forged and returned the form to GECC.  *See id.*, ¶¶ 29-31.

---

[8]    *Greenpond South, LLC v. General Electric Capital Corp.*, Case No. 14-cv-01214-SRN-TNL (D. Minn.).

- In late October 2000, GECC (which had not yet been paid off) again sought verification of Costco purchase orders. This time GECC contacted Costco directly and was told that the purchase orders were not Costco's. Immediately thereafter, Petters called GECC and threatened it, saying GECC should leave Petters' customers alone. As a result, GECC understood that Petters was operating a fraudulent enterprise and had knowledge of a conspiracy to defraud investors. *See id.*, ¶¶ 34-37.

- Petters Capital paid off GECC in an atypical and improper manner. *See id.*, ¶¶ 45-46.

- In connection with a Redtag financing request in December 2000, Petters sent GECC copies of Costco checks to prove that Costco had paid on the earlier purchase orders. GECC called the bank to confirm the checks, and the bank told GECC that the checks had cleared but for different amounts. *See id.*, ¶¶ 5, 48-51.

- GECC violated banking regulations and internal policies. *See id.*, ¶¶ 38, 43, 71.

- In order to get repaid on its loans to Petters, GECC joined a conspiracy with Petters and committed the following overt acts and omissions, among others, in furtherance of the conspiracy and to aid and abet Petters' fraud:

  o On January 30, 2001, GECC responded to Redtag auditor Ernst & Young's request for information regarding any Redtag defaults under the GECC-Redtag credit facility, but failed to describe the Costco checks sent by Petters in December 2000. *See id.*, ¶¶ 6-7, 54-67.

  o GECC failed to correct a recommendation letter that Mr. Menczynski had issued to Petters on January 4, 2000, despite knowing it would be distributed to third parties. *See id.*, ¶¶ 27, 54, 71.

- Petters and his associates used Petters' former relationship with GECC to induce others to lend to Petters. *Id.*, ¶¶ 8-9.

Greenpond is seeking damages of at least $141,290,116, plus interest and attorneys' fees. After GECC removed the Greenpond Litigation to the District of Minnesota, Greenpond filed a motion to remand. *See* Greenpond Docket. GECC also filed a motion to transfer venue to the United States District Court for the Southern District of Florida for referral to the bankruptcy court presiding over the Palm Beach Litigation because of the bankruptcy court's familiarity with the facts and law at issue. Greenpond, however, opposed transfer. *See id.* A hearing was held on July 11, 2014, and the parties currently await a ruling. GECC has not filed a responsive pleading, and discovery has not begun.

C.    **The Ritchie Litigation**

The third lawsuit (the "Ritchie Litigation")[9] was initiated on September 23, 2014 by Ritchie Capital Management, L.L.C. and several of its affiliates (collectively, "Ritchie") in New York state court by the filing of a Summons with Notice.[10]  *See* Ritchie Summons.  Based in part on Ritchie's confirmation of diversity jurisdiction, GECC removed the case to the U.S. District Court for the Southern District of New York on October 29, 2014.[11]  *See* Ritchie Docket.

Ritchie alleges that it invested with Petters in 2008, long after the GECC-Petters lending relationship ended.  Ritchie does not allege that it had any direct contact with GECC at any time.  Ritchie makes the following allegations in its Summons with Notice in support of its claims of conspiracy to defraud and aiding and abetting fraud against GECC, which are nearly identical to the allegations made by the Palm Beach Trustee and Greenpond:

- GECC was a lender to Petters Capital and Redtag.  *See* Ritchie Summons, at 2.

- In order to get repaid on its loans to Petters, GECC joined a conspiracy with Petters and committed overt acts and omissions in furtherance of the conspiracy and to aid and abet Petters' fraud, including letting Petters use GECC's recommendations and UCC financing statements to victimize future lenders.  *See id.*

- GECC violated applicable banking regulations and internal policies.  *See id.* at 3.

- Petters and his associates used Petters' former relationship with GECC to induce others to lend to Petters.  *See id.*

Allegations made by Ritchie in a related action against Costco Wholesale Corp. provide some additional color as to Ritchie's claims against GECC.  For example, Ritchie alleges that:

---

[9]       *Ritchie Capital Management, L.L.C. v. General Electric Capital Corp.*, Case No. 14-cv-8623 (S.D.N.Y.).

[10]      Ritchie is permitted by New York law to file a complaint at a later date.  *See* N.Y. C.P.L.R. § 304.

[11]      GECC's Notice of Removal stated that GECC would be seeking to transfer venue either to the Southern District of Florida or to the District of Minnesota, in each case for such further referrals as may be appropriate.

- In October 2000, GECC wrote a letter to Costco requesting verification of several purchase orders.  *See* Costco Compl., Ex. C, ¶¶ 4, 20.

- On December 20, 2000, Petters provided GECC with copies of eleven checks issued by an affiliate of Costco in connection with a Redtag financing request.  *See id.*, ¶ 28. Ritchie asserts that all of the checks had been issued to payees other than Petters Capital and had cleared in amounts much smaller than those represented.  *See id.*, ¶ 30.

Ritchie's Summons with Notice, combined with the allegations made by Ritchie against defendants in other actions, leaves little doubt that Ritchie's claims against GECC are based on the same core set of facts as the other Plaintiffs' claims.

Ritchie is seeking damages of at least $157 million, plus interest, attorneys' fees and related costs.  Ritchie has not yet filed a complaint or any other pleadings in the case.

## D.    The Ark Litigation

The fourth lawsuit (the "Ark Litigation")[12] was filed by the chapter 7 trustee (the "Ark Trustee") of the bankruptcy estate of Ark Discovery II, LP ("Ark") in the United States District Court for the Northern District of Illinois on October 27, 2014.  *See* Ark Compl.  The Ark Trustee alleges that Ark began investing with Petters in October 2007, long after the GECC-Petters lending relationship ended.  The Ark Trustee does not allege that GECC had any direct contact with Ark at any time.  The Ark Trustee's claims against GECC for conspiracy to commit fraud and aiding and abetting fraud are based upon the following allegations, which are nearly identical to the allegations made by the other Plaintiffs:

- GECC was a lender to Petters Capital and Redtag.  *See id.*, ¶ 2, 25.  The credit agreements provided for success fees to be paid to GECC.  *See id.*, ¶¶ 4-5, 28.

- GECC failed to enforce material provisions of the credit agreement with Petters Capital, including certain cash controls.  *See id.*, ¶¶ 36-38.

---

[12]       *Gecker v. General Electric Capital Corp.*, Case No. 14-cv-08447 (N.D. Ill.).

- On May 3, 2000, GECC sent a purchase order verification form to Petters Capital requesting that it be sent to Costco to complete and return. Petters caused Costco's signature to be forged and returned the form to GECC. *See id.*, ¶¶ 32-34.

- GECC grew suspicious of Petters. As a result, on October 9, 2000, GECC and Petters Capital signed an agreement that provided for the payoff and termination of the Petters Capital credit facility by October 27, 2000. *See id.*, ¶ 41.

- In late October 2000, GECC (which had not yet been paid off) again sought verification of Costco purchase orders. This time GECC contacted Costco directly and was told that the purchase orders were not Costco's. Immediately thereafter, Petters called GECC and threatened it, saying GECC should leave Petters' customers alone. As a result, GECC understood that Petters was operating a fraudulent enterprise and had knowledge of a conspiracy to defraud investors. *See id.*, ¶ 42-45.

- Petters Capital paid off GECC in an atypical and improper manner. *See id.*, ¶ 54.

- In connection with a Redtag financing request in December 2000, Petters sent GECC copies of Costco checks to prove that Costco had paid on the earlier purchase orders. GECC called the bank to confirm the checks, and the bank told GECC that the checks had cleared but for different amounts. *See id.*, ¶¶ 55-63.

- GECC violated applicable banking regulations and internal policies. *See id.*, ¶¶ 79-97.

- In order to get repaid on its loans to Petters, GECC joined a conspiracy with Petters and committed the following overt acts and omissions, among others, in furtherance of the conspiracy and to aid and abet Petters' fraud:

  - On January 30, 2001, GECC responded to Redtag auditor Ernst & Young's request for information regarding any Redtag defaults under the GECC-Redtag credit facility, but failed to describe the Costco checks sent by Petters in December 2000. *See id.*, ¶¶ 5, 67-78.

  - On March 3, 2003, GECC consented to the termination of financing statements it had filed in connection with the GECC-Petters Capital credit facility. *See id*., ¶¶ 5, 103-107.

The Ark Trustee is seeking damages of over $107 million, plus interest, attorneys' fees and punitive damages. An initial status conference has been set for January 8, 2015, and the Ark Trustee and GECC have agreed to extend GECC's deadline to file a responsive pleading to January 26, 2015. There has been no additional activity to date in the Ark Litigation.

In short, each of the Petters-Related Cases against GECC involves claims, factual allegations, and legal theories that are virtually carbon copies of one another.

IV.   **DISCUSSION**

A.   **The Petters-Related Cases Easily Meet The Standard For Transfer And Consolidation**

The four cases pending against GECC in four separate federal districts present precisely the situation for which 28 U.S.C. § 1407 was enacted.  As the Panel has articulated, "the potential for eliminating duplicative discovery and related motion practice, as well as the chance to conserve judicial resources . . . all weigh in favor of centralization."  *See In re Royal Alliance Assocs., Inc., Sec. Litig.*, 856 F. Supp. 2d 1339 (J.P.M.L. 2012) (ordering consolidation of cases related to a Ponzi scheme over plaintiff's objection); *In re Food Fair Sec. Litig.*, 465 F. Supp. 1301, 1304-05 (J.P.M.L. 1979); *In re Multidistrict Private Civ. Treble Damage Litig.*, 298 F. Supp. 484, 490-92 (J.P.M.L. 1968).  Given the similar allegations in each of the Petters-Related Cases, the threshold requirement that the actions involve common questions of fact is easily met. Moreover, transfer and consolidation of the cases would further judicial economy, promote efficient discovery, be more convenient for the large number of witnesses potentially facing deposition, and minimize the likelihood of inconsistent pretrial decisions.

1.   **The Petters-Related Cases Involve Virtually Identical Factual Allegations, Legal Theories, And Claims**

The Plaintiffs cannot credibly dispute that the Petters-Related Cases are nearly identical. At base, they are all centered on two alleged incidents.  First, they allege that GECC acquired knowledge of Petters' fraudulent scheme in October 2000 after attempting to verify purchase orders purportedly issued to Petters by Costco.  *See* Palm Beach Am. Compl. , ¶ 77 ("By October 24, 2000, GECC understood that Petters and Petters Capital were operating a fraudulent enterprise."); Greenpond Compl., ¶ 37 ("By this point [on or about October 23, 2000], GECC had already concluded that Petters was engaged in fraudulent activity."); Ark Compl., ¶ 45 ("GECC now [after speaking with Costco] had good cause to believe that the loan proposals and

supporting documents that Petters Capital had provided over the course of the preceding two years were fraudulent . . . ."); Ritchie Summons, at 2 ("By October 2000, [GECC] had uncovered . . . what would turn out by 2008 to be one of the largest financial frauds in US business history.").  Second, as further evidence that GECC was aware of—and allegedly joined and aided and abetted—Petters' fraud, the Plaintiffs focus on the facts and circumstances surrounding Petters' faxing to GECC copies of eleven checks purportedly issued by Costco. Palm Beach Am. Compl., ¶¶ 105-113; Greenpond Compl., ¶¶ 48-52; Ark Compl., ¶¶ 55-64.

Moreover, all of the Plaintiffs allege that GECC agreed to stay silent regarding Petters' fraud in exchange for Petters' paying off the outstanding GECC loans.  *See* Palm Beach Am. Compl., ¶¶ 7-8 ("GECC agreed to keep silent and not disclose its knowledge to anyone outside GECC . . . . GECC did so for the simplest of reasons . . . *greed and self-interest*."); Greenpond Compl., ¶ 4 ("GECC complied [with Petters' request], electing to refrain from exercising any legal rights whatsoever and instead to help Petters cover-up his fraud while GECC awaited payment from proceeds from other defrauded investors."); Ritchie Summons, at 2 ("GECC joined [Petters' fraud] to insure that GECC would be paid and make a large profit by 2002."); Ark Compl., ¶ 4 ("GECC entered into an implicit agreement with Petters.  GECC would remain silent . . . and help Petters maintain the illusion of a thriving, legitimate enterprise in return for payment in full of all outstanding principal and interest due under Petters Facilities . . . .").

The Plaintiffs also all allege that GECC committed certain overt acts in furtherance of, or to aid and abet, Petters' fraud.  For example, the Plaintiffs point to the audit response letter GECC provided to Redtag's auditor in early 2001.  *See* Palm Beach Am. Compl., ¶¶ 114-116; Greenpond Compl., ¶¶ 54-67; Ark Compl., ¶¶ 67-78.  The Plaintiffs also point to GECC's consenting to Petters' termination of UCC financing statements filed by GECC.  *See* Palm Beach Am. Compl., ¶¶ 130-144; Ritchie Summons, at 2; Ark Compl., ¶¶ 103-107.

Finally, the claims asserted by each of the Plaintiffs are essentially the same across the Petters-Related Cases.  All four Plaintiffs assert a claim against GECC of "conspiracy to commit fraud."  *See* Palm Beach Am. Compl., ¶¶ 166-74; Greenpond Compl., ¶¶ 81-88; Ritchie Summons, at 2; Ark Compl., ¶¶ 132-137.  All four Plaintiffs also have asserted that GECC aided and abetted Petters' fraud, *see* Palm Beach Am. Compl., ¶¶ 175-184; Greenpond Compl., ¶¶ 89-94; Ritchie Summons, at 2; Ark Compl., ¶¶ 138-147, though the Palm Beach Trustee's aiding and abetting claim has been dismissed.

GECC currently is facing four lawsuits in four different districts that are all based on nearly identical factual allegations and claims.  Although the Plaintiffs had no direct interactions with GECC and invested in Petters only after GECC terminated its relationship with Petters, the Plaintiffs assert that GECC is liable for the losses sustained by them as a result of Petters' fraud. The same nucleus of operative facts relating to Petters' fraudulent scheme, and GECC's alleged role in it, is clearly present in each case, making transfer and consolidation appropriate.  *See In re Commercial Money Ctr., Inc., Equip. Lease Litig.*, 229 F. Supp. 2d 1379 (J.P.M.L. 2002) (ordering transfer and consolidation after finding the same nucleus of operative facts pertaining to an alleged nationwide investment scheme to defraud investors by bankrupt equipment leasor); *In re Musha Cay Litig.*, 330 F. Supp. 2d 1364 (J.P.M.L. 2004) (finding that centralization was necessary for two actions arising from the same underlying commercial transaction that shared claims of fraud and misrepresentation).

## 2.      Transfer And Consolidation Would Promote Efficient Discovery And Reduce Inconvenience For Parties And Witnesses

Transfer and consolidation of the Petters-Related Cases is appropriate because it would promote more efficient discovery, including by reducing duplicative discovery.  *See, e.g., In re Foundry Resins Antitrust Litig.*, 342 F. Supp. 2d 1346, 1347 (J.P.M.L. 2004) (concluding that

centralization of actions was necessary to eliminate duplicative discovery).  In attempting to establish the central elements of their common claims, the Plaintiffs in each of the Petters-Related Cases will seek discovery regarding the relationship between Petters and GECC.  As a result, the Plaintiffs' document requests, interrogatories, and requests to admit undoubtedly will overlap to a large extent.  Requiring GECC to respond to largely duplicative discovery requests for four different Plaintiffs would subject GECC to unnecessary burden and expense.  *See In re Auto Body Shop Antitrust Litig.*, 2014 WL 3908000, at *1-2 (J.P.M.L. Aug. 8, 2014) (noting that transfer and consolidation were appropriate to eliminate duplicative discovery when the actions shared a common factual core); *In re Yamaha Motor Corp. Rhino ATV Prods. Liab. Litig.*, 597 F. Supp. 2d 1377, 1378 (J.P.M.L. 2009).

Similarly, a large number of depositions are likely to take place in each of the Petters-Related Cases, and the parties certainly will seek to depose many of the same witnesses who are familiar with the GECC-Petters lending relationship.  For example, the Plaintiffs all make allegations involving certain GECC employees (e.g., Paul Feehan and Jack Morrone) and former GECC employees (e.g., Richard Menczynski).  *See* Palm Beach Am. Compl., ¶ 17; Greenpond Compl., ¶¶ 24, 28, 34; Ritchie Summons, at 2; Ark Compl., ¶¶ 32, 60, 103.  Indeed, the Palm Beach Trustee filed Initial Disclosures identifying over 115 potential witnesses, and has proposed deposing many of them during 2015.  These include over a dozen GECC employees, but also over twenty *former* GECC employees who now reside around the country or internationally.  The undue harm resulting from multiple depositions faced by these former employees, over whom GECC has no authority or control, would be particularly great.

Similarly, in each of the cases, the same witnesses will have information regarding Petters' fraudulent enterprise, including Petters himself and former Petters employees and professionals.  Moreover, Petters and several of his affiliates are currently incarcerated, which

15

poses additional burdens on the parties, including obtaining leave of each court presiding over a Petters-Related Case pursuant to Fed. R. Civ. P. 30(a)(2)(B) and coordinating with the appropriate prison, for every deposition the parties wish to conduct of a prisoner.  The Palm Beach Trustee has identified six prisoners as witnesses and over twenty-five others with "knowledge of Petters' operation" or "knowledge of Petters' business," all of whom would need to be deposed on the same issues several times, absent consolidation of these cases within a single district.

Depositions are time-consuming and expensive procedures that by their nature inconvenience witnesses and—to the extent that a judge must resolve disputes—tie up judicial resources.  A witness who could be scheduled to sit for one deposition would be tremendously burdened by four separate (and largely duplicative) depositions, especially if the depositions are held in separate locations.  The parties, too, would incur increased expenses by failing to consolidate depositions that are likely to involve very similar factual inquiries.

In light of the facts and considerations discussed above, it is clear that consolidation of the Petters-Related Cases before a single court would strongly promote judicial efficiency and be more convenient for the witnesses and parties.  *See In re Auto Body Shop*, 2014 WL 3908000, at *1 (transfer before a single judge was beneficial because he or she could "structure pretrial proceedings to accommodate all parties' legitimate discovery needs while ensuring that common witnesses are not subjected to duplicative discovery demands"); *In re Enfamil Lipil Mktg. & Sales Practices Litig.*, 764 F. Supp. 2d 1356, 1357 (J.P.M.L. 2011).

**3.      Consolidation Would Minimize The Risk Of Inconsistent Pretrial Decisions**

There can be no legitimate dispute that four actions involving similar allegations and asserting the same causes of action against the same defendant pending before four different judges materially increases the likelihood that there will be inconsistent pretrial decisions,

16

ranging from inconsistent discovery rulings to inconsistent decisions on liability.  *See In re AZEK Bldg. Prods.*, 999 F. Supp. 2d 1366, 1368 (J.P.M.L. 2014); *In re Toyota Motor Corp. Hybrid Brake*, 732 F. Supp. 2d 1375, 1376-77 (J.P.M.L. 2010).  As the Panel has recognized, "[c]entralization will enable the transferee judge to make consistent rulings on such discovery disputes from a global vantage point" and will otherwise prevent inconsistent pretrial rulings on common factual issues.  *See In re Yamaha*, 597 F. Supp. 2d at 1378; *see also In re Dow Chem. "Sarabond" Prods. Liab. Litig.*, 650 F. Supp. 187, 188 (J.P.M.L. 1986).

**B.     GECC Proposes Consolidation Before Judge Nelson Of The District Of Minnesota**

In selecting the appropriate transferee forum, this Panel analyzes the same factors discussed above: the just and efficient conduct of the litigation and the convenience of the parties and witnesses.  *See In re Nat'l Sec. Agency Telecomms. Records Litig.*, 474 F. Supp. 2d 1355, 1356 (J.P.M.L. 2007).  Based on these factors, GECC respectfully proposes that the Panel transfer the Petters-Related Cases to the District of Minnesota and consolidate them before the Honorable Susan Richard Nelson.  Judge Nelson currently is presiding over the Greenpond Litigation, sits in a district with a strong nexus to Petters' fraudulent scheme (where many of the relevant witnesses and documents are located), and has experience with Petters-related litigation.

**1.     Consolidation Before Judge Nelson Will Maximize Efficiency**

Petters' fraudulent scheme was born in Minnesota.  Petters' headquarters were located in Minnesota, Petters lived in Minnesota, and many of the transactions underlying his scheme occurred in Minnesota.  As a result, the vast majority of litigation arising out of Petters' fraud was brought in, or subsequently transferred to, the District of Minnesota.  For example:

- The criminal cases brought against Petters and many of his affiliates were brought in the District of Minnesota.  *See, e.g.*, *United States v. Petters*, No. 08-364 (D. Minn.); *United States v. White*, No. 08-299 (D. Minn.); *United States v. Reynolds*, No. 08-320 (D. Minn.); *United States v. Coleman*, No. 08-304 (D. Minn.); *United States v. Wehmhoff*, No. 08-387 (D. Minn.); *United States v. Catain*, No. 08-302 (D. Minn.).

- Civil actions against Petters and his colleagues and affiliates were brought by the SEC in the District of Minnesota.  *SEC v. Petters*, No. 09-1750 (D. Minn.); *see also SEC v. Quan*, No. 11-723 (D. Minn.).  The *Quan* case relates to the actions of Acorn—Greenpond's predecessor in interest—and Marlon Quan, the founder and principal of Acorn, related to the Petters investments made by Acorn which form the basis for Greenpond's claims against GECC.  In February 2014, Quan and Acorn were convicted by a Minnesota jury of securities fraud.

- Furthermore, the consolidated bankruptcy proceedings for several Petters entities are pending in the Bankruptcy Court for the District of Minnesota.  *See In re Petters Co.*, No. 08-45257 (Bankr. D. Minn.); *In re Polaroid Corp.*, No. 08-46617 (Bankr. D. Minn.).[13]  The bankruptcy cases include over 200 adversary proceedings that have been brought by Douglas A. Kelley, as trustee for the Petters debtors.  The Palm Beach Trustee, in fact, as one of the largest creditors of the Petters debtors, serves on the creditors' committee in the Petters bankruptcy cases and is actively involved in those proceedings.

- The adversary proceedings pending in the Bankruptcy Court in Minnesota include Petters-related actions against Ritchie.  *See Kelley v. Ritchie Capital Mgmt., L.L.C. (In re Petters Co.)*, Adv. No. 10-4440 (Bankr. D. Minn.); *Kelley v. Ritchie Capital Mgmt., L.L.C. (In re Petters Co.)*, Adv. No. 13-4299 (Bankr. D. Minn.).

The connection of the Petters-Related Cases is sufficiently strong, in fact, that in another Petters-related action brought by Ritchie, the Southern District of New York recently ordered the parties to submit briefs addressing "why the case should not or cannot be transferred to the District of Minnesota," and then, *sua sponte*, transferred the case to Minnesota.  *Ritchie Capital Mgmt., L.L.C. v. JPMorgan Chase & Co.*, No. 14 Civ. 2557, Dkt. No. 65 (LGS) (S.D.N.Y. 2014), Ex. D.

Indeed, Judge Nelson herself has presided over litigation related to Petters, including litigation involving Ritchie.  *See Ritchie Capital Mgmt., L.L.C. v. Stoebner*, No. 12-3038 (involving an appeal from the adversary proceeding brought against Ritchie by the trustee in the Polaroid bankruptcy); *Kelley v. JPMorgan Chase & Co.*, 464 B.R. 854 (D. Minn. 2011) (rejecting the defendants' motion to withdraw the reference with respect to an adversary proceeding brought by the Petters bankruptcy trustee).  Furthermore, Judge Nelson already is presiding over Greenpond's action against GECC, including extensive briefing and oral

---

[13]    Petters acquired Polaroid Corp. prior to the discovery of his fraud.

argument just four months ago on remand and related issues.  Given Judge Nelson's and the

District of Minnesota's familiarity with Petters' fraudulent scheme and related litigation, GECC

respectfully submits that consolidation before Judge Nelson is appropriate.  *See In re Am. Cont'l*

*Corp./Lincoln Sav. & Loan Sec. Litig.*, 130 F.R.D. 475, 476 (J.P.M.L. 1990) (selecting transferee

district in part due to the presence of a related bankruptcy action in the same district).

**2.      Transfer To The District Of Minnesota Will Not Inconvenience The Witnesses Or The Parties**

Consolidation of the Petters-Related Cases before Judge Nelson would greatly reduce

inconvenience for both the witnesses and parties.  While many of the witnesses and relevant

documents are located in Minnesota already, other witnesses and parties are located throughout

the country.  For example, other GECC witnesses who are likely to testify are located in, among

other places, Illinois and Connecticut.  Other third party witnesses are located in federal prisons

in Kansas, Florida, North Carolina, and Colorado, among other places.  On information and

belief, the Plaintiffs (or their various constituents) are located in Illinois, Florida, New York, and

the Cayman Islands, among other places.  The District of Minnesota is located centrally within

the United States in a major metropolitan area and, therefore, provides an extremely convenient

venue for the Petters-Related Cases.  (Indeed, the Palm Beach Trustee has requested taking

depositions in Minnesota of GECC witnesses.)

Moreover, as discussed above, Ritchie and Greenpond are actively involved in litigation

in the District of Minnesota,[14] and the Palm Beach Trustee is actively involved in the Petters

bankruptcy cases as a member of the creditors' committee.  The fact that many of the parties

already are involved in litigation in Minnesota further supports consolidation there.

---

[14]      Indeed, Ritchie previously commenced a Petters-related action in the District of
Minnesota.  *See Ritchie Capital Mgmt., L.L.C. v. Jeffries*, No. 10-668 (D. Minn. 2012).

V.   **CONCLUSION**

For the reasons stated herein, GECC respectfully requests that the Panel issue an order consolidating the actions listed on the Schedule of Actions to a single district for consolidated pretrial proceedings.  GECC also respectfully recommends transferring the cases to the United States District Court for the District of Minnesota.

Dated:  November 14, 2014                    Respectfully submitted,

/s/ Robert J. Malionek
Robert J. Malionek
Roger G. Schwartz
Latham & Watkins LLP
885 Third Avenue
New York, NY  10022
Telephone:  (212) 906-1200
Facsimile:  (212) 751-4864
Email:  robert.malionek@lw.com,
roger.schwartz@lw.com

Sean M. Berkowitz
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois  60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767
Email:  sean.berkowitz@lw.com

*Counsel for Defendant*
*General Electric Capital Corporation*